FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT, E.D.N.Y.
★ NOV 1 0 2011 ★
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
JASON ELLIS,

                Plaintiff,

      -against-

DETECTIVE VINCENT GANNON,
individually and in his official capacity, and
CITY OF NEW YORK,

                Defendants.
-----------------------------------------------------------X

ORDER
10-CV-1373 (SJF)(ETB)

FEUERSTEIN, United States District Judge:

On March 26, 2010, plaintiff Jason Ellis ("plaintiff") commenced this action pursuant to 42 U.S.C. § 1983 against Detective Vincent Gannon ("Gannon"), individually and in his official capacity as a detective employed by the New York City Police Department ("NYPD"), and the City of New York ("the City") (collectively, "defendants"), alleging violations of his constitutional rights arising from his arrest. Pending before the Court are: (1) defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Rule 56") for summary judgment dismissing the complaint in its entirety; and (2) plaintiff's cross motion, *inter alia*, pursuant to Rule 56 for partial summary judgment on his false arrest claims. For the reasons set forth below, defendants' motion is granted in part and plaintiff's cross motion is denied.

I.     BACKGROUND

    A.     Factual Background

During an interview with Gannon on November 10, 2008, Teofila Agruda ("the victim")

1

reported that she had received a statement for her credit card account which included unauthorized charges in the amount of two thousand one hundred sixty-six dollars and ninety-five cents ($2,166.95) for three (3) airline tickets on Air Jamaica issued under different names, including one ticket issued in the name of "Jayson Ellis." (Savino Decl., Ex. B). The victim provided Gannon with a copy of the statement of her credit card account.

Gannon then contacted Air Jamaica. Howard Morrison, the corporate security director for Air Jamaica, informed Gannon that the records of Air Jamaica revealed that on October 23, 2008, an airline ticket was purchased in plaintiff's name using the victim's credit card account. (Savino Decl., Exs. C and D). Gannon was provided a printout of the airline ticket issued by Air Jamaica in the name of "Jayson Ellis," with a travel itinerary indicating a departure from John F. Kennedy International Airport ("JFK") on October 25, 2008 and a return to JFK on October 27, 2008, which was purchased for the amount of six hundred seventy-seven dollars and twenty-nine cents ($677.29) on a credit card account[1]. (Savino Decl., Exs. C and D).

On November 14, 2008, plaintiff went to the one hundred eleventh (111th) precinct and informed Gannon that he had purchased airline tickets through a friend who had informed him that he knew someone with the ability to obtain airline tickets at cheap prices and that he had traveled to Jamaica using the ticket purchased on the victim's credit card account. (Savino Decl., Ex. D). Gannon then arrested plaintiff and charged him under New York State law with grand larceny in the fourth degree (N.Y. Penal Law § 155.30), unlawful possession of personal

---

[1] The credit card account number is redacted in the exhibit on the original motion, and partially redacted in an exhibit submitted with defendants' reply papers. The partial number set forth in the reply exhibit matches the victim's credit card account number and defense counsel represents that the full credit card account number on the ticket belongs to the victim. (Reply Mem., at 6).

identification information in the third degree (N.Y. Penal Law § 190.81) and identity theft in the second degree (N.Y. Penal Law § 190.79(1)). (Savino Decl., Exs. D and E).

On November 15, 2008, plaintiff was arraigned in the Criminal Court of the City of New York, County of Queens ("the criminal case") and was released on his own recognizance. (Compl., ¶ 13).

On April 28, 2009, plaintiff accepted an adjournment in contemplation of dismissal ("ACD") pursuant to New York Criminal Procedure Law Section 170.55, which was conditioned upon his payment of restitution to the victim in the amount of seven hundred twenty-two dollars and thirty-three cents ($722.33). (Savino Decl., Ex. G and H).

On October 27, 2009, the criminal case against plaintiff was dismissed pursuant to Section 170.55 of the New York Criminal Procedure Law. (Savino Decl., Ex. G).

B.   Procedural History

On March 26, 2010, plaintiff commenced this action against defendants asserting claims under 42 U.S.C. § 1983 and state law for false arrest and imprisonment (first and third causes of action), malicious prosecution (third cause of action) and negligence (second cause of action).

Defendants now move pursuant to Rule 56 for summary judgment dismissing the complaint in its entirety and plaintiff cross-moves, *inter alia*, pursuant to Rule 56 for partial summary judgment on his false arrest claims.

II.   DISCUSSION

A.   Standard of Review

Summary judgment should not be granted unless "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In ruling on a summary judgment motion, the district court must first "determine whether there is a genuine dispute as to a material fact, raising an issue for trial." McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (internal quotations and citations omitted); see Ricci v. DeStefano, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (holding that "[o]n a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party *only* if there is a 'genuine' dispute as to those facts." (Emphasis added) (internal quotations and citation omitted)). "A fact is material if it 'might affect the outcome of the suit under governing law.'" Spinelli v. City of New York, 579 F.3d 160, 166 (2d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "Where the undisputed facts reveal that there is an absence of sufficient proof as to one essential element of a claim, any factual disputes with respect to other elements become immaterial and cannot defeat a motion for summary judgment." Chandok v. Klessig, 632 F.3d 803, 812 (2d Cir. 2011); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (holding that summary judgment is appropriate when the non-moving party has no evidentiary support for an essential element for which it bears the burden of proof).

If the district court determines that there is a genuine dispute as to a material fact, the court must then "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment," Spinelli, 579 F.3d at 166 (internal quotations and citation omitted); see also Pucino v. Verizon Wireless Communications, Inc., 618 F.3d 112, 117 (2d Cir. 2010), to determine whether there is a genuine issue for trial. See Ricci, 129 S.Ct. at 2677. A genuine issue exists for summary judgment purposes "where the evidence is

4

such that a reasonable jury could decide in the non-movant's favor." Beyer v. County of Nassau, 524 F.3d 160, 163 (2d Cir. 2008) (citing Guilbert v. Gardner, 480 F.3d 140, 145 (2d Cir. 2007)); see also United Transp. Union v. National R.R. Passenger Corp., 588 F.3d 805, 809 (2d Cir. 2009). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Ricci, 129 S.Ct. at 2677 (quoting Matsushita Elec. Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

"The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact," F.D.I.C. v. Great American Ins. Co., 607 F.3d 288, 292 (2d Cir. 2010) (quotations and citation omitted), after which the burden shifts to the nonmoving party to "come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." Brown v. Eli Lilly & Co., 654 F.3d 347, 358 (2d Cir. 2011); see also Spinelli, 579 F.3d at 166. Thus, the nonmoving party can only defeat summary judgment "by coming forward with evidence that would be sufficient, if all reasonable inferences were drawn in [its] favor, to establish the existence of" a factual question that must be resolved at trial. Spinelli, 579 F.3d at 166 (internal quotations and citations omitted); see also Celotex Corp., 477 U.S. at 323, 106 S.Ct. 2548. "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." Hayut v. State Univ. of N.Y., 352 F.3d 733, 743 (2d Cir. 2003) (alterations in original). Moreover, the nonmoving party "may not rely on conclusory allegations or unsubstantiated speculation" to defeat summary judgment. Brown, 654 F.3d at 358.

B.   False Arrest and Imprisonment Claims[2]

Defendants move for summary judgment dismissing plaintiff's false arrest claims (first and third causes of action) in their entirety on the basis that there was probable cause for plaintiff's arrest. Alternatively, defendants move for summary judgment dismissing plaintiff's false arrest claims against Gannon in his individual capacity (first cause of action) based upon the doctrine of qualified immunity.

"Before deciding whether [Gannon] is entitled to qualified immunity, [I] must decide whether [plaintiff] 'has alleged a constitutional violation at all.'" Finigan v. Marshall, 574 F.3d 57, 61 (2d Cir. 2009) (quoting Kerman v. City of New York, 261 F.3d 229, 235 (2d Cir. 2001)). "The existence of probable cause to arrest constitutes justification and is a complete defense to an action for false arrest, whether that action is brought under state law or under Section 1983." Amore v. Novarro, 624 F.3d 522, 536 (2d Cir. 2010) (quotations and citation omitted); see also Dickerson v. Napolitano, 604 F.3d 732, 751 (2d Cir. 2010) ("Probable cause is a complete defense to any action for false arrest * * * in New York."); Torraco v. Port Authority of New York and New Jersey, 615 F.3d 129, 139 (2d Cir. 2009) ("[T]he existence of probable cause is an absolute defense to a false arrest claim.") "Probable cause exists if at the time of the arrest the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the suspect had committed or was committing an offense." Amore, 624 F.3d at 536 (internal quotations, alterations and citation omitted); see also Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006) ("An

---

[2] False arrest and false imprisonment claims overlap, insofar as false arrest claims are merely "a species of" false imprisonment. Wallace v. Kato, 549 U.S. 384, 388, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007). Accordingly, plaintiff's false arrest and false imprisonment claims are virtually indistinguishable.

6

officer has probable cause to arrest when he or she has knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime." (internal quotations and citation omitted)). "[T]he probable cause inquiry is based upon whether the facts known by the arresting officer at the time of the arrest objectively provided probable cause to arrest." Jaegly, 439 F.3d at 153; see also Torraco, 615 F.3d at 139 (accord); Finigan, 574 F.3d at 61-62.

At the time of plaintiff's arrest, New York Penal Law Section 155.30(4) prohibited a person from stealing a credit card and New York Penal Law Section 190.81 prohibited a person from knowingly possessing a person's credit card account number or code. A reasonable officer could have concluded based upon, *inter alia*, the victim's complaint and credit card account statement and the information provided by the Air Jamaica employee, that there was probable cause to arrest plaintiff for stealing the victim's credit card, which was indisputably used to purchase plaintiff's airline ticket, and for knowingly possessing the victim's credit card account number.

In any event, the probable cause to arrest need not be "predicated upon the offense invoked by the arresting officer, [n]or even upon an offense closely related to the offense involved by the arresting officer." Jaegly, 439 F.3d at 153 (internal quotations and citation omitted). "[T]he 'subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.'" Id. (quoting Devenpeck v. Alford, 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)). "[A] claim for false arrest turns only on whether probable cause existed to arrest [the plaintiff], and * * * it is not relevant whether probable cause existed with respect to each individual charge, or, indeed, any charge actually

invoked by the arresting officer at the time of arrest." Id. at 154; see also Dickerson, 604 F.3d at 752 ("[P]robable cause is based on the facts warranting arrest and not the statute pursuant to which a plaintiff was charged."); Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) ("[A]n arrest is not unlawful so long as the officer has knowledge of, or reasonably trustworthy information as to, facts and circumstances sufficient to provide probable cause to believe that the person arrested has committed any crime.") "[W]hen faced with a claim for false arrest, [courts] focus on the validity of the *arrest*, and not on the validity of each charge." Jaegly, 439 F.3d at 154 (emphasis in original). Given the undisputed facts of this case, no reasonable juror could find that Gannon lacked probable cause to arrest plaintiff for committing some crime, whether or not it was one of the crimes charged. Indeed, plaintiff's counsel concedes that Gannon "had evidence that a crime had probably been committed in that the [victim's] credit card information had been improperly used to purchase tickets for various passengers * * *." (Plaintiff's Memorandum of Law in Support of Plaintiff's Motions and in Opposition to Defendants [sic] Motion for Summary Judgment ["Plf. Mem."], at 5). Plaintiff's counsel also admits that "it is [] beyond dispute that the [victim's] credit card was used to purchase airline tickets for multiple individuals, including plaintiff * * *." (Plf. Mem., at 6).

Plaintiff's argument that Gannon lacked evidence that plaintiff himself had committed the crime, (see Plf. Mem., at 5-6), ignores the facts, *inter alia*, that plaintiff's name and pedigree information were on the airline ticket and that plaintiff admitted to possessing and using the ticket which had been illegally purchased using the victim's credit card account. Although plaintiff proffered an arguably plausible explanation for his possession and use of one of the airline tickets illegally purchased on the victim's credit card account, Gannon was not bound to credit his explanation prior to arresting him. See, e.g. Caceres v. Port Authority of New York and

8

New Jersey, 631 F.3d 620, 623 (2d Cir. 2011) (finding that the police were not bound to credit the plaintiff's explanation and profession of innocence); Jaegly, 439 F.3d at 153 (finding that although the plaintiff claimed that he had a valid explanation for his actions, the arresting officer was not required to explore and eliminate every plausible claim of innocence before making an arrest). Contrary to plaintiff's contention, there is no duty imposed upon arresting officers "to investigate exculpatory defenses offered by the person being arrested or to assess the credibility of unverified claims of justification before making an arrest," Jean v. Montina, 412 Fed. Appx. 352, 353-54 (2d Cir. Feb. 9, 2011) (summary order) (quoting Jocks v. Tavernier, 316 F.3d 128, 135-36 (2d Cir. 2003)), nor must officers "explore and eliminate every theoretically plausible claim of innocence before making an arrest." Id. at 354 (quoting Ricciuti v. New York City Transit Authority, 124 F.3d 123, 128 (2d Cir. 1997)); see also Caldarola v. Calabrese, 298 F.3d 156, 167-68 (2d Cir. 2002) (accord); Finigan, 574 F.3d at 63 ( "[O]nce officers possess facts sufficient to establish probable cause, they are neither required nor allowed to sit as prosecutor, judge or jury. Their function is to apprehend those suspected of wrongdoing, and not to finally determine guilt through a weighing of the evidence." (quoting Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989)); Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("[T]he arresting officer does not have to prove plaintiff's version wrong before arresting him.") Gannon's failure to conduct a more extensive investigation prior to arresting plaintiff did not defeat the probable cause that existed to arrest plaintiff for committing some crime. See, e.g. Jean, 412 Fed. Appx. at 354 (holding that the arresting officer's failure to conduct a more extensive investigation before arresting the plaintiff did not defeat probable cause); Panetta v. Crowley, 460 F.3d 388, 395-96 (2d Cir. 2006) ("[A]n officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause."); Curley, 268 F.3d at 70

(holding that it does not matter that an investigation might have cast doubt upon the basis for the arrest). Given the existence of probable cause for plaintiff's arrest, plaintiff cannot maintain his Section 1983 or state law false arrest and imprisonment claims against Gannon (first cause of action), as a matter of law.

Moreover, since plaintiff's arrest was justified, i.e., there was probable cause therefor, no tort was committed by Gannon and, thus, there is no basis upon which to impose vicarious liability upon the City under New York law. See, e.g. Veras v. Truth Verification Corp., 87 A.D.2d 381, 385-86, 451 N.Y.S.2d 761 (1st Dept. 1982), aff'd, 57 N.Y.2d 947, 457 N.Y.S.2d 241, 443 N.E.2d 489 (1982); Farkas v. City of New York, 242 A.D.2d 597, 598-99, 662 N.Y.S.2d 558 (2d Dept. 1997). Furthermore, to prevail on a Section 1983 claim against a municipal entity, such as the City, a plaintiff must show: "(1) actions taken under color of law; (2) *deprivation of a constitutional or statutory right*; (3) causation; (4) damages; and (5) that an official policy of the municipality caused the constitutional injury." Roe v. City of Waterbury, 542 F.3d 31, 36 (2d Cir. 2008) (emphasis added); see generally Monell v. Department of Social Services of City of New York, 436 U.S. 658, 690-1, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Given the existence of probable cause for plaintiff's arrest, plaintiff also cannot maintain his Section 1983 claim against the City (third cause of action) because he cannot establish any injury to a constitutionally protected right as a matter of law. See, e.g. Torraco, 615 F.3d at 140 (finding that the plaintiff could not show that his constitutional rights were violated, so as to establish liability against the municipality, because there was probable cause for his arrests). Accordingly, the branch of defendants' motion seeking summary judgment dismissing plaintiff's federal and state law false arrest and imprisonment claims is granted and those claims (first and third causes of action) are

dismissed in their entirety with prejudice.[3]

C. Malicious Prosecution Claim[4]

"In order to prevail on a Section 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment, * * *, and establish the elements of a malicious prosecution claim under state law." Fulton v. Robinson, 289 F.3d 188, 195 (2d Cir. 2002). "To establish a malicious prosecution claim under New York law, a plaintiff must show that a proceeding was commenced or continued against him, with malice and without probable cause, and was terminated in his favor." Id.; see also Green v. Mattingly, 585 F.3d 97, 103 (2d Cir. 2009) (holding that in order to state a malicious prosecution claim under either Section 1983 or state law, the plaintiff must allege, *inter alia*, that the proceedings were terminated in his favor). "[T]he issue of whether a given type of termination was favorable to the accused is a matter of law for the court[,] [unless] * * * there is a question as to the nature of the circumstances leading to that termination, * * *." Murphy v. Lynn, 118 F.3d 938, 950 (2d Cir. 1997).

The undisputed facts demonstrate that the criminal charges against plaintiff were dismissed conditioned upon plaintiff's payment of restitution to the victim pursuant to an adjournment in contemplation of dismissal under New York Law Criminal Procedure Law

---

[3] In light of this determination, the branch of defendants' motion seeking dismissal of plaintiff's false arrest and imprisonment claims against Gannon (first cause of action) based upon the doctrine of qualified immunity is denied as moot.

[4] Although plaintiff denies asserting a claim for malicious prosecution, (Plf. Mem., at 14), the complaint can be read to state such a claim, (see Compl., ¶ 28), and plaintiff has not sought to withdraw that claim. Accordingly, the branch of defendants' motion seeking dismissal of the malicious prosecution claim will be considered as unopposed.

Section 170.55. Such a disposition does not constitute a favorable termination for purposes of a malicious prosecution claim. See, e.g. Green, 585 F.3d at 103-04 (holding that an adjournment in contemplation of dismissal is not a favorable termination for malicious prosecution claims); Rothstein v. Carriere, 373 F.3d 275, 287 (2d Cir. 2004) (holding that an adjournment in contemplation of dismissal pursuant to New York Criminal Procedure Law Section 170.55 extinguishes a malicious prosecution claim because it is a bargained-for dismissal of the criminal case); Fulton, 289 F.3d at 196 (recognizing that under New York law, an adjournment in contemplation of dismissal under New York Criminal Procedure Law Section 170.55 is not a favorable termination); Murphy, 118 F.3d at 949 (recognizing that some types of dismissals are deemed not to be favorable to the accused for purposes of a malicious prosecution claim, including adjournments in contemplation of dismissal pursuant to New York Criminal Procedure Law Section 170.55); Hollender v. Trump Village Cooperative, Inc., 58 N.Y.2d 420, 425-26, 461 N.Y.S.2d 765, 448 N.E.2d 432 (1983) (holding that an adjournment in contemplation of dismissal "by its very nature operated to bar recovery" for malicious prosecution). Where, as here, the dismissal of criminal charges "was the result of a compromise to which the accused agreed * * *, it is not a termination in favor of the accused for purposes of a malicious prosecution claim." Murphy, 118 F.3d at 949; see also Rothstein, 373 F.3d at 286 ("A termination is not favorable to the accused . . . if the charge is withdrawn or the prosecution abandoned pursuant to a compromise with the accused." (quoting Smith-Hunter v. Harvey, 95 N.Y.2d 191, 196, 712 N.Y.S.2d 438, 734 N.E.2d 750 (2000)). Accordingly, the branch of defendants' motion seeking dismissal of plaintiff's federal and state law malicious prosecution claim (third cause of action) is granted and that claim is dismissed in its entirety with prejudice.

D.  Negligence Claim

In his second cause of action, plaintiff alleges, *inter alia*, that defendants "negligently failed to use due care in the performance of their duties in that they, among other negligent acts: (a) Failed to perform their duties as a reasonably prudent and careful police officer or detective would have done under similar circumstances, including, but not limited to conducting a proper and thorough investigation, conducting an improper and unlawful detention, seizure and arrest, and other acts which a detective of ordinary prudence would not have done. (b) Hired and retained incompetent and unfit police officers[.] (c) Failed to exercise care in instructing and training police officers, detectives, officially as to their conduct including failing to give proper and adequate instructions as to when citizens may be detained and taken into custody, as to the submission of accurate criminal charges, as to the consequence of bringing false charges, and as to the obligation of police officers to intervene to protect citizens deprived of constitutional rights by other police officers. (d) Failed to establish meaningful procedures for disciplining officers and other personnel who have engaged in wrongful arrests[.]" (Compl., ¶ 21). Clearly, plaintiff's negligence claim seeks damages based entirely upon Gannon's arrest of him.

"Under New York law, a plaintiff may not recover under general negligence principles for a claim that law enforcement officers failed to exercise the appropriate degree of care in effecting an arrest or initiating a prosecution." Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); see also Chimurenga v. City of New York, 45 F.Supp.2d 337, 340 (S.D.N.Y. 1999); Santoro v. Town of Smithtown, 40 A.D.3d 736, 738, 835 N.Y.S.2d 658 (2d Dept. 2007). For claims seeking damages based upon a purportedly unlawful arrest and prosecution, "a plaintiff must resort to the traditional remedies of false imprisonment and malicious prosecution and cannot recover under the broader principles of negligence." Pawlicki v. City of Ithaca, 993 F. Supp. 140, 143-44

(N.D.N.Y. 1998) (dismissing the plaintiff's negligence claims based upon his purportedly unlawful arrest on the basis that New York law required the plaintiff to "resort to the traditional remedies of false imprisonment and malicious prosecution * * *."); see also McSween v. Edwards, 91 F.Supp.2d 513, 525 (E.D.N.Y. 2000) ("New York law prohibits recovery under a general theory of negligence when the traditional remedies of false arrest and imprisonment are available." (internal quotations and citations omitted)); Simon v. State of New York, 12 A.D.3d 171, 783 N.Y.S.2d 463 (1st Dept., 2004); Johnson v. Kings County District Attorney's Office, 308 A.D.2d 278, 284-85, 763 N.Y.S.2d 635 (2d Dept., 2003) ("It is well settled that New York courts do not recognize claims for negligent or malicious investigation.") Moreover, any claim for negligent training in investigative procedures is akin to a claim for negligent investigation or prosecution, which is not cognizable under New York law. See, e.g. Baez v. Jetblue Airways Corp., 2009 WL 2447990, at * 5 n. 4 (E.D.N.Y. Aug. 3, 2009). Furthermore, since the arrest was justified and, in any event, there is no evidence that the City knew or should have known of any propensity on the part of Gannon to make purportedly unlawful arrests, plaintiff cannot establish any claim for negligent hiring, retention, supervision or discipline. See generally Id., at * 5; Shor v. Touch-N-Go Farms, Inc., 83 A.D.3d 927, 928, 920 N.Y.S.2d 709 (2d Dept. 2011); T.W. v. City of New York, 286 A.D.2d 243, 245, 729 N.Y.S.2d 96 (1st Dept. 2001). Accordingly, plaintiff's state law negligence claim (second cause of action) is dismissed with prejudice as a matter of law.[5]

---

[5] In light of the dismissal of all of plaintiff's state law claims on the merits, the branch of defendants' motion seeking summary judgment dismissing plaintiff's state law claims for failure to comply with the notice of claim requirements of New York General Municipal Law § 50-e is denied as moot.

14

III. Conclusion

For all of the foregoing reasons, the branches of defendants' motion pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking summary judgment dismissing plaintiff's federal and state law false arrest and imprisonment and malicious prosecution claims are granted and those claims (first and third causes of action), as well as plaintiff's state law negligence claim (second cause of action), are dismissed in their entirety with prejudice, and defendants' motion is otherwise denied as moot; and plaintiff's cross-motion, *inter alia*, pursuant to Rule 56 of the Federal Rules of Civil Procedure seeking partial summary judgment on his false arrest claims is denied. The Clerk of the Court shall enter judgment in favor of defendants, close this case and, pursuant to Rule 77(d)(1) of the Federal Rules of Civil Procedure, serve notice of entry of this order upon all parties in accordance with Rule 5(b) of the Federal Rules of Civil Procedure.

SO ORDERED.

_____
Sandra J. Feuerstein
United States District Judge

Dated: November 10, 2011
      Central Islip, New York

15